```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Betty Kitts,                     :

      Plaintiff,            :

    v.                          :     Case No.  2:15-cv-2319

Carolyn W. Colvin, Acting        :
Commissioner of Social Security,     Magistrate Judge Kemp

      Defendant.            :

OPINION AND ORDER

I. Introduction

Plaintiff, Betty Kitts, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income.  That application was filed on July 18, 2011, and alleged that Plaintiff became disabled on December 2, 2002.  She later amended that date to November 21, 2012.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on September 27, 2013.  In a decision dated November 18, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on April 4, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 7, 2015.  Plaintiff filed a statement of specific errors on October 20, 2015, to which the Commissioner responded on January 21, 2016.  Plaintiff did not file a reply brief, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Ms. Kitts was 41 when the administrative hearing was held. She has a GED.  She testified to the following at the administrative hearing (see Tr. 94-119).

Plaintiff had worked in the past as a customer service representative, but that was in 2002, and for several years before that. Hers was a desk job, taking incoming calls for telephone service. She stopped working after she suffered a severe back injury. When asked to describe how her neck and low back were at the time of the hearing, Plaintiff said they were "all bad."

The medical records showed that Plaintiff was being treated for fibromyalgia and ischemic heart disease. She said that her condition had deteriorated since her heart attack, and also since being in a car accident in 2006. She had undergone several surgeries since then, and had pain in those areas, especially in the chest, back, neck, and knees. She had swelling in her ankle as well.

Plaintiff said she was able to reach overhead, but not on an ongoing basis. She could not stand for more than five or six minutes at a time and had trouble walking due to her knee condition. She experienced both angina and panic attacks. She could not be around people. The panic attacks were constant. She could sit for an hour before needing to lie down and could lift a gallon of milk. She could not climb stairs.

Plaintiff took various medications and had side effects such as chronic fatigue, headaches, and coughing. She quit smoking the day she had her heart attack but still had shortness of breath. She believed her heart attack aggravated her psychological problems. She said she spent the majority of her time lying down because that was how she was most comfortable, and she also napped for several hours each day. During the day, she read and watched television. She could go grocery shopping with assistance from her mother or her son. Lastly, she reported problems with memory and concentration, which she particularly noticed when trying to take online classes.

### III. The Medical Records

The medical records in this case are found beginning on page 338 of the administrative record. The Court will separate them into records relating to Plaintiff's claim of disabling pain and records which she relies on in support of a motion for sentence six remand.

#### A. Evidence of Disabling Pain

In her statement of errors, Plaintiff presents a lengthy summary of the medical evidence of record, noting that she was treated for both physical and mental impairments. She then recounts the history of that treatment, beginning in 2011, pointing out that she had been diagnosed with a panic disorder, a major depressive disorder (but in remission), generalized anxiety disorder, and PTSD. Later, she was also diagnosed with ADHD, and she was prescribed medication for these various ailments. Her mental condition was also evaluated by Dr. Dubey, a consultative examiner, who concluded that she could perform work tasks with a number of moderate restrictions. Because the only issue she has raised about the ALJ's decision relates to physical pain, however, and the only portions of the record she cites in support of that argument are records relating to chest, neck, and extremity pain, the Court will examine only those records and will not undertake a detailed review of the evidence relating to her psychological conditions.

Focusing on the records relating to Plaintiff's physical condition at times relevant to her amended onset date of November 21, 2012, the first record is an evaluative report from Tri-State Occupational Medicine, Inc. It states that Plaintiff was being treated for back and foot pain on January 6, 2012. She had injured her left foot in a motor vehicle accident and was having pain and swelling in the left ankle. She had had ACL surgery in 2006 and continued to experience swelling in her knee, and had

begun to have back pain in 2002 which was treated in various ways and which radiated to her left buttock and hip. She described herself as essentially house-bound. Examination showed that she walked with a normal gait. She had five trigger points for fibromyalgia. Her right knee was tender, as was her left ankle, and straight leg raising was positive bilaterally in the supine position. The assessment included chronic low back, right knee, and left ankle pain. The examiner, Dr. Brown, thought that Plaintiff could do light duty work. (Tr. 348-53). She continued to seek treatment for left ankle pain and was diagnosed with left ankle instability and left fibular exostosis. A brace was prescribed in August of 2012. (Tr. 404-05).

Plaintiff suffered a heart attack in November of 2012. A stent was placed in the right coronary artery and she was discharged from the hospital in stable condition. (Tr. 376). There are no indications of any heart-related problems after that date, although Plaintiff did report shortness of breath from time to time.

B. New Medical Evidence

Following the ALJ's decision, Plaintiff submitted new evidence about some of her medical conditions. That evidence is summarized here.

First, Plaintiff reported chest pain to a nurse practitioner during a doctor's appointment dated January 16, 2014. She also said that she also experienced shortness of breath. A follow-up visit with a physician was scheduled for January 21, but the result of that visit does not seem to be in the record. She saw Dr. Piacentini (or perhaps a certified nurse practitioner) on February 27, 2014, who noted that Plaintiff was supposed to have been doing cardiac rehabilitation but was not. She had been hospitalized shortly before that visit for hypotension, and reported recurrent chest pain at that time although there were no

signs of a cardiac problem.

The next office note is dated August 12, 2014. At that visit, Plaintiff was having severe back pain with knots in her back, neck, and chest. She was diagnosed with chronic pain syndrome and she asked for an increase in fentanyl, which the nurse advised against. She was counseled for chronic pain. At a follow-up visit on October 3, 2014, Plaintiff reported fatigue. It does not appear that her treatment or medication was changed. (Tr. 8-62). The Appeals Council considered this evidence but found that it did not affect the ALJ's determination that Plaintiff had not proven a disability on or before November 18, 2013. (Tr. 2).

### IV. The Medical Expert Testimony

Dr. Ronald Kendrick, an orthopedic surgeon, was called as a medical expert. His testimony begins at page 119 of the administrative record.

Dr. Kendrick said that the documented medical impairments included ACL reconstruction of the right knee, chronic lateral ligament sprain of the left ankle, fibromyalgia, hypertension, a myocardial infarction secondary to coronary artery disease which required angioplasty and a stent, depression, and a panic disorder. He was not able to comment on the limitations caused by those latter two impairments.

From a physical standpoint, Dr. Kendrick did not see any impairments that would satisfy the Listing of Impairments. He thought that Plaintiff's physical impairments limited her to sedentary work, however, with occasional bending and stooping and no kneeling or crawling.

### V. The Vocational Testimony

Dr. Jerry Olsheski was the vocational expert in this case. His testimony begins at page 123 of the administrative record.

Dr. Olsheski first testified that Plaintiff's past relevant

work as a customer service representative was sedentary and skilled.  He was then asked to assume that Plaintiff had the physical restrictions identified by Dr. Kendrick and, in addition, was limited to work involving simple and uninvolved instructions and only occasional interaction with others in the workplace.  With those restrictions, Dr. Olsheski said that Plaintiff could not do the customer service job, but could work at various sedentary occupations such as production assembler, production inspector, or hand packer.  He gave numbers for those jobs in the local, state, and national economies.  Someone who could not maintain concentration, persistence, and pace for even simple work could not do those jobs, however, or any other competitive work.  The same would be true for someone who missed two days of work per month.  Finally, Dr. Olsheski testified that the jobs he identified were not fast-paced and did not usually involve strict production quotas.

## VI.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 70-83 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since her amended onset date of November 21, 2012.  Going to the next step of the sequential evaluation process, the ALJ determined that Plaintiff had multiple severe impairments including status post ACL reconstruction of the right knee in 2006, a chronic lateral ligament sprain of the left ankle, fibromyalgia, hypertension, status post myocardial infarction secondary to coronary artery disease requiring coronary angioplasty and stent placement, a depressive disorder, and a panic disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20

C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level.  She could bend or stoop occasionally and could not kneel or crawl.  Also, she could only do work involving simple, uninvolved instructions, and could interact with others in the workplace on an occasional basis.

The ALJ next concluded that Plaintiff, with these limitations, could not do any of her past relevant work.  However, Plaintiff could do sedentary jobs like production assembler, production inspector, and hand packer.  The ALJ further found that these jobs existed in significant numbers in the local, State, and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VII.  Plaintiff's Statement of Specific Errors

Plaintiff raises two issues in her statement of errors.  The first is that the ALJ did not properly evaluate her pain in determining that it did not disable her.  Second, she submits that new and material evidence requires a remand.  The first of these contentions is reviewed under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435

(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  Pain

Plaintiff's first claim of error is, at its base, an attack on the ALJ's credibility finding. Pointing out that the ALJ gave three reasons for discounting Plaintiff's claim of debilitating pain, Plaintiff argues that those reasons - Plaintiff's failure to begin cardio rehabilitation following her heart attack, evidence of failure to keep appointments or comply with treatment recommendations, and Plaintiff's having gone on vacation - are insufficient to support his credibility finding. She contends that the ALJ simply failed to follow the Court of Appeals' directive, stated in cases like Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), to evaluate pain on the basis of a number of factors which tend to demonstrate the extent to which pain is a disabling consequence of certain physical impairments.

Evaluation of a claimant's subjective reports of disabling pain is subject to a two-part analysis. First, the Commissioner should determine if there is objective medical evidence which confirms the presence of disabling pain. If not (and there frequently is not, given that pain is difficult to measure or

-8-

quantify, and is experienced differently even by persons with the same underlying condition), the Commissioner should determine if the claimant suffers from an objectively-established medical condition of sufficient severity to permit a reasonable inference to be drawn that the disabling pain actually exists.  See Duncan v. Secretary of H.H.S., 801 F.2d 847, 853 (6th Cir. 1986).  This procedure is reflected in 20 C.F.R. §404.1529(a).

It is important to note that these inquiries are to be made separately, and that if there is objective evidence of a sufficiently severe underlying condition, a claimant can prove the existence of disabling pain due to that condition through other evidence even if the medical evidence is not helpful in establishing the extent of the claimant's pain.  Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).  Thus, the Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking, but must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  The Commissioner should also give appropriate weight to the opinion of a long-term treating physician as to whether the claimant is accurately reporting or exaggerating the extent to which disabling symptoms exist.  Felisky, 35 F.3d at 1040.  If the Commissioner summarily rejects the claimant's testimony concerning pain without considering these matters, reversal or remand may be warranted.

Since tolerance of pain is a highly individual matter, determination of disability based on pain also depends to some extent on the credibility of the claimant.  Houston v. Secretary of H.H.S., 736 F.2d 365 (6th Cir. 1984).  If the Commissioner rejects the claimant's testimony as to the extent of the

claimant's pain, there need not be an express credibility finding. Willis v. Secretary of H.H.S., No. 84-3477, slip op. at 9 (6th Cir. Apr. 30, 1985) (unpublished opinion), citing Ramirez v. Secretary HEW, 550 F.2d 1286 (1st. Cir. 1977). However, the reasons for the rejection must be apparent from the record. Id. This requirement insures that a sufficient record for review of the Commissioner's credibility determination is made. Beavers v. Secretary of HEW, 557 F.2d 383, 386-87 (6th Cir. 1978), citing Combs v. Weinberger, 501 F.2d 1361 (4th Cir. 1974). In order to reject claimant's credibility, the Commissioner cannot rely solely on personal observation of the claimant but must base the credibility determination on "some other evidence." Weaver v. Secretary of H.H.S., 722 F.2d 310, 312 (6th Cir. 1983) (emphasis in original); see also, Persons v. Secretary of H.H.S., 526 F.Supp. 1202 (S.D. Ohio 1981). In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Beavers v. Secretary of HEW, 577 F.2d at 386-87. However, the Commissioner's credibility finding is not entitled to substantial deference if the medical and lay evidence supporting allegations of pain is uncontradicted and overwhelming. King v. Heckler, 742 F.2d 968 (6th Cir. 1984).

  Here, the ALJ reached the following conclusions about Plaintiff's pain. First, he credited Dr. Kendrick's opinions about Plaintiff's medical conditions and physical capacity as being well-supported by the record and by Dr. Kendrick's expertise. (Tr. 76). He also discounted the less favorable opinions of the state agency reviewers and the consultative examiner as not adequately taking Plaintiff's subjective complaints into account. (Tr. 77). Next, he cited to the proper standards (20 C.F.R. §404.1529 and §416.929) and stated that he

-10-

considered both the objective medical evidence and "other evidence" as required by those regulations. Id. He then discounted Plaintiff's claim of disabling symptoms based on the lack of objective medical evidence to substantiate them - including the absence of any condition severe enough to cause pain which would preclude the performance of sedentary work - and because there were factors which detracted from her overall credibility, including the three reasons which Plaintiff has focused on in her statement of errors. Lastly, the ALJ noted that Plaintiff was still able to perform activities of daily living such as shopping, managing money, caring for children and pets, and attending appointments. He then concluded that limiting Plaintiff to the performance of sedentary work adequately accounted for her pain and associated symptoms. (Tr. 79).

Plaintiff appears to disregard the fact that the ALJ cited, as a reason for his finding about her credibility, not only the three bases she comments upon, but the totality of the medical evidence. Although claims of disabling pain cannot be rejected *solely* on the basis of a lack of objective medical evidence showing pain of that severity, the ALJ does not have to disregard the medical evidence in its entirety. Rather, an ALJ may properly consider an "analysis of daily activities, references to negative findings in the objective medical evidence, and evidence of noncompliance with treatment plans." Cross v. Comm'r of Social Security, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005). As stated in 20 C.F.R. §404.1529(c)(2), "[o]bjective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." What an ALJ may not do is reject evidence of disabling pain "solely because the available objective medical evidence does not substantiate" the claimant's

-11-

statements about pain. Id.

Here, the ALJ performed the proper analysis, finding both a lack of objective evidence of conditions which can reasonably be expected to cause disabling pain, and also taking various permissible factors into account in judging Plaintiff's credibility. Such determinations are entitled to substantial deference. Felisky, 35 F.3d at 1040. The Court finds no error in the way in which the ALJ evaluated Plaintiff's complaints of disabling pain and determined that she was only as limited as described by the medical expert, Dr. Kendrick, and that she could therefore perform the jobs described by the vocational expert. Consequently, there is no basis here for directing a remand under 42 U.S.C. §405(g), sentence four.

### B. New Evidence

Plaintiff's other statement of error deals with new evidence submitted after the ALJ's decision. As described above, that new evidence consists of records showing that Plaintiff was treated for chest pain and neck and back pain from January to October, 2014, and was diagnosed with chronic pain syndrome, although no specific changes to her treatment or medication regimen appear to have been made. She contends that this evidence is both new and material and that the case should be remanded under 42 U.S.C. §405(g), sentence six, so that the ALJ can consider it.

The Social Security Act provides that the Court may remand a case for further consideration of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. §405(g), sentence six. The plaintiff has the burden of proof on the issue of whether a sentence six remand is appropriate. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

To show good cause, Plaintiff must present some justification for the failure to have acquired and presented

such evidence for inclusion in the record during the hearing before the Administrative Law Judge. Id.  Evidence submitted after the ALJ's decision and which is not reviewed by the Appeals Council cannot be considered by the district court unless good cause is shown for the failure to have presented the evidence to the ALJ.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

"In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  Sizemore v. Sec'y of HHS, 865 F.2d 709, 711 (6th Cir. 1988).  New evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter.  Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980).  Additionally, the new evidence must relate to a condition which affected the plaintiff's ability to work at the time the administrative decision was made.  Evidence concerning a newly-developed medical condition is not ordinarily relevant to the question of whether the plaintiff was disabled at the time the Secretary's decision was entered.  Oliver v. Secretary of HHS, 804 F.2d 964, 966 (6th Cir. 1986); see also Wilson v. Comm'r of Social Security, 2011 WL 2607098, *6 (E.D. Mich. July 1, 2011) (new evidence to support a sentence six remand "must ... be probative of the claimant's condition for the time period for which benefits were denied").

The Commissioner argues, and the Court agrees, that this evidence, although new, is not material.  The Commissioner's memorandum makes these pertinent points: that the records contain diagnoses but no functional assessments; that they do not contain any tests or clinical observations which suggest that Plaintiff's condition had worsened; that they are largely cumulative of the evidence considered by the ALJ; and that they do not relate to the period of time prior to November 18, 2013.  Although records

of subsequent treatment may, in some cases, relate to the time period under consideration, there is no indication that these particular records do so.  The worsening of an existing condition or the development of a new one is not material to a decision about disability on or before a certain date.  As the Court of Appeals said in Sizemore v. Sec'y of HHS, 865 F.2d 709, 712 (6th Cir. 1988), "[r]eviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition."  For all of these reasons, Plaintiff's request for a sentence six remand lacks merit.

## VIII.  Decision

Based on the above discussion, Plaintiff's statement of errors (Doc. 16) is overruled.  The Clerk is directed to enter judgment in favor of the Defendant and to dismiss this case.

/s/ Terence P. Kemp
United States Magistrate Judge